UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 12-cr-00389-1 |
| MICHAEL DeMARCO, | ) ) Judge John W. Darrah |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Defendant Michael DeMarco was convicted by a jury of one count of wire fraud, in violation of 18 U.S.C. § 1343, on June 20, 2013. Following his conviction, Defendant filed a motion for a new trial pursuant to Fed. R. Crim. P. 33 and a renewed motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29. The Government filed a response opposing these Motions. Defendant was given the opportunity to file a reply but failed to do so. For the reasons stated below, Defendant's Motions [43, 44] are denied.

## BACKGROUND

At trial, Michael Suarez, the victim, testified that Defendant helped him obtain a Chase Bank checking account, while Defendant worked at Chase as a branch manager. Suarez informed Defendant he was trying to sell his home and testified that Defendant told him that Chase Bank would purchase the home. According to Suarez, Defendant convinced him he needed a home equity line of credit to fix his home. Defendant convinced Suarez to complete paperwork that would help Suarez obtain a line of credit, and Defendant was present when Suarez obtained a line of credit. The bank employee handling the closing testified that Suarez

did not appear to fully understand what was happening during the closing. Suarez testified Defendant tried to keep him from reading the closing documents.

Evidence introduced at trial demonstrated that the credit line documents listed Suarez's home address as Defendant's business address. Bank records showed the proceeds from the home equity line of credit were deposited into a joint bank account with Defendant's business address on record, though Suarez testified he did not agree to open a joint checking account with Defendant. The parties stipulated that Defendant wired $245,000 from that joint account to his own checking account; this was reversed a day later, at which point Defendant withdrew $245,000 from the joint account and deposited the money into the joint checking account he held with his wife.

Thereafter, Defendant controlled the funds from that credit line for his own benefit and spent almost 90 percent of the money on his own use. Suarez testified he did not consent to these transactions, but Defendant testified he believed he was acting with the full knowledge and consent of Suarez. FBI Special Agent Daniel McCune also testified that Defendant admitted that he lied to Suarez about having a buyer lined up for Suarez's property and admitted he had wronged Suarez.

**LEGAL STANDARD**

*Judgment of Acquittal*

Federal Rule of Criminal Procedure 29 provides that the "court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). However, "[t]he court may reserve decision on the motion, proceed with the trial (where the motion is made before the close of all the evidence),

submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty . . . ." Fed. R. Crim. P. 29(b). In reserving this decision, a court must decide the motion for judgment of acquittal based on the evidence presented at the time the ruling was reserved. *Id.*

To grant Defendant's motion in this case, it must be shown that there was insufficient evidence to sustain a conviction of wire fraud, a crime which requires a showing that the defendant has "devise[d] any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce." 18 U.S.C. § 1343. In order to obtain a judgment of acquittal under Rule 29, the defendant must show that "even drawing all inferences in the light most favorable to the government, no rational trier of fact could have found him guilty beyond a reasonable doubt." *United States v. Acosta*, 534 F.3d 574, 591 (7th Cir. 2008) (citing *United States v. Hendrix*, 482 F.3d 962, 966 (7th Cir. 2007)).

*Motion for a New Trial*

Federal Rule of Criminal Procedure 33 provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Under Seventh Circuit law, a new trial is necessary in situations where "the substantial rights of the defendant have been jeopardized by errors or omissions during trial." *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989) (citation omitted); *see also United States v. Van Eyl*, 468 F.3d 428, 436 (7th Cir. 2006) (stating that the defendant is entitled to a new trial if the trial error "had a prejudicial effect upon the jury's verdict").

## ANALYSIS
### *Judgment of Acquittal*

Defendant concedes he was with Suarez when he opened the line of credit; he also concedes he transferred funds from the line of credit to his own account, that he controlled these funds for his own benefit, and that Suarez testified that he did not consent to these transactions. (R. 29 Mot. ¶ 3.) However, Defendant contends that he believed he was acting with full knowledge and consent from Suarez and that there was insufficient evidence to prove no agreement between them existed. (R. 29 Mot. ¶¶ 3-4.) Defendant also argues that there is insufficient evidence to prove that he acted with the intent to defraud Suarez at the time of the wire transfer. (R. 29 Mot. ¶ 5.)

Defendant's claims with respect to the evidence are unavailing. Defendant cannot meet the difficult burden that no rational trier of fact could have found him guilty beyond a reasonable doubt. A reasonable jury certainly could have considered the evidence presented at trial, particularly Suarez's testimony that he did not agree to let Defendant use the credit line for his own personal use, and could have found Defendant guilty.

Defendant also claims there is insufficient evidence to prove that he acted with an intent to defraud at the time of the wire transfer. This assertion contradicts the evidence presented at trial and is an insufficient basis to grant a motion for judgment of acquittal. In *United States v. Howard*, the defendant was also accused of wire fraud or mail fraud and appealed the district court's denial of her motion for judgment of acquittal, asserting that the government did not prove her intent to defraud. *United States v. Howard*, 619 F.3d 723, 726 (7th Cir. 2010). The Seventh Circuit held that:

> [I]ntent to defraud requires a wilful act by the defendant with the specific intent to deceive or cheat, usually for the purpose of getting financial gain for one's self or

causing financial loss to another. However, because direct evidence of a defendant's fraudulent intent is typically not available, specific intent to defraud may be established by circumstantial evidence and by inferences drawn from examining the scheme itself.

*Id.* at 727 (internal quotations and citations omitted). Defendant provided no support for his assertion that the Government failed to offer sufficient evidence of his intent. By contrast, the evidence provided by the Government permitted, at the very least, for inferences to be drawn that Defendant intended to defraud Mr. Suarez. Therefore, this claim is unavailing and is an insufficient grounds to grant a motion for acquittal under Fed. R. Crim. P. 29.

Neither of Defendant's asserted bases for an acquittal under Fed. R. Crim. P. 29. are adequate. Thus, considering the evidence presented by the Government at trial, a rational trier of fact could have found Defendant guilty beyond a reasonable doubt, and this Motion is denied.

*Motion for a New Trial*

Defendant separately moves for a new trial under Fed. R. Crim. P. 33, asserting the Court erred in evidentiary and other rulings at trial such that Defendant is entitled to a new trial. Each of these purported errors is addressed in turn.

<u>Confrontation of Witnesses</u>

Defendant argues that the Court erred in restricting defense counsel's cross-examination of Suarez. (R. 33 Mot. ¶ 1.) Defendant claims to have attempted to impeach Suarez on "a number of matters relating to his credibility and judgment", but "[t]he Court found that these matters were collateral, and therefore impeachment as to these matters was improper." (*Id.*) As a result, Defendant claims his Sixth Amendment right to confront witnesses against him has been violated. "The Sixth Amendment guarantees a defendant an opportunity for effective cross-examination, but there is no guarantee of cross-examination to whatever extent the defense might

wish." *United States v. Recendiz*, 557 F.3d 511, 530 (7th Cir. 2009) (internal quotation and citation omitted). "A judge has broad discretion to place reasonable limits on cross-examination, based on concerns of, *inter alia*, confusion of the issues and relevance." *Recendiz*, 557 F.3d at 530; *see also United States v. Reyes*, 542 F.3d 588, 593 (7th Cir. 2008) ("Under the Confrontation Clause of the Sixth Amendment, a defendant must be given an opportunity for effective cross-examination. . . . If the 'core values' of the Confrontation Clause remain intact, we merely ensure that the district court's exercise of its wide discretion in limiting cross-examination was not abusive." (citations omitted)).

Given the Court's broad discretion to limit cross-examination to avoid issues of confusion and irrelevance, Defendant has not provided enough information to identify any prejudicial error on the part of the Court. Consequently, this claim does not provide an adequate basis for a new trial.

Admission and Exclusion of Evidence

Defendant further asserts the Court improperly admitted evidence "of the defendant's spending well after the relevant time period," despite Defendant's objection. (R. 33 Mot. ¶ 2.) The Government disagrees and contends Defendant never objected to the admission of this evidence. (Resp. Br. at 5.) Neither party submitted transcripts in support of their positions.

However, even assuming Defendant *did* object, the Government asserts that this evidence of Defendant's "spending of the proceeds of the scheme for his own use and benefit is relevant to prove an element of the offense." (*Id*. at 6.) That evidence supported the allegation that Defendant committed fraud by wire and thus "devise[d] any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or

promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce." 18 U.S.C.A. § 1343.

Defendant also makes a corresponding claim that if the Government's evidence of his spending after the relevant time period was properly admitted, Defendant's evidence that he had been in negotiations with Bank of America to repay the money should also have been admitted. (R. 33 Mot. ¶ 2.) However, it is unclear how this evidence would have been used to support his defense that he did not intentionally commit wire fraud. The Seventh Circuit provides that evidence that is "only tangentially relevant" may be properly excluded. *United States v. Hill,* 40 F.3d 164, 169 (7th Cir. 1994) (defendant claimed that a subsequent act of good conduct should have been admissible, but court ruled that this was only tangentially relevant to the issue and therefore inadmissible). In general, "[p]roof that a defendant acted lawfully on other occasions is not necessarily proof that he acted lawfully on the occasion alleged in the indictment." *United States v. Heidecke*, 900 F.2d 1155, 1162 (7th Cir. 1990).

There was no clear error in the Court's admission of the Government's evidence of Defendant's spending and the exclusion of Defendant's evidence that he sought to repay Bank of America. Therefore, these evidentiary rulings are not appropriate grounds for a new trial.

Evidence of Defendant's Bankruptcy

Defendant contends the evidence of his 2009 bankruptcy proceeding should have been excluded under Federal Rule of Evidence 404(b) because its prejudicial effect outweighed its evidentiary value. (R. 33 Mot. ¶ 3.) Defendant also argues that this admission violated Federal Rule of Evidence 403 because it presented a danger of unfair prejudice, confusion as to the issues, or misleading the jury. (*Id.*)

7

In response, the Government argues this evidence was proper because Defendant's bankruptcy commenced a year after the scheme occurred. Defendant did not list the $245,000 he obtained from Suarez's line of credit as either income or a debt to Suarez in an attempt to hide his scheme from the Government. His failure to list this $245,000 as income further demonstrates Defendant did not regard this money as legitimately earned income. Therefore, the Government reasons, the probative value outweighs any unfair prejudice to Defendant.

In determining if evidence is admissible under Fed. R. Evid. 404(b), the court considers the following four factors:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the evidence has probative value that is not substantially outweighed by the danger of unfair prejudice.

*United States v. Leahy*, 464 F.3d 773, 797 (7th Cir. 2006). In this case, it is reasonable to maintain that the evidence of the exclusion of the income or debt from Defendant's bankruptcy filing helps establish that the money from this scheme was not legitimate income. The exclusion of this scheme or transaction from Defendant's bankruptcy filing is clearly relevant and, moreover, the probative value outweighs the danger of unfair prejudice to Defendant.

The fourth factor touches on the concern "that jurors will decide that a defendant is guilty because they believe that he has a propensity for committing the charged crime or that he simply has a bad character, making him more likely to commit crime in general. When balancing prejudice against probative value, it is important to keep in mind that all relevant evidence is prejudicial and that evidence must be *unfairly* prejudicial in order for it to be inadmissible under this prong." *United States v. Howard*, 692 F.3d 697, 707 (7th Cir. 2012) (emphasis in original).

Here, Defendant cannot demonstrate that evidence of his bankruptcy would have had an unfairly prejudicial, confusing, or misleading effect on the jury. This evidence relates directly to the scheme at issue at trial and is probative of whether or not Defendant believed the income he earned was legitimate. This is, therefore, not an appropriate basis for a new trial.

### Jury Instructions

Defendant next argues that the Court included a jury instruction that improperly broadened the grounds for conviction. (R. 33 Mot. ¶ 5.) However, Defendant fails to identify to which jury instruction he refers. A careful review of the instructions provided in writing to the jury, which followed the Seventh Circuit Pattern Jury Instructions, does not elucidate an instruction that, as Defendant describes, "allowed the jury to convict the defendant if it found that he had committed any financial act with the requisite criminal intent." (*Id*.) Defendant was given the opportunity to further address this point on reply and failed to do so. Accordingly, this basis for a new trial is rejected.

### Closing Arguments

Finally, Defendant asserts that the Government made an improper closing argument that "the defense was insufficient in part because the defendant could not provide details regarding the builder he claimed to have engaged as a potential buyer of Mr. Suarez' property" and that this statement improperly shifted the burden of proof to the defendant. (R. 33 Mot. ¶ 6.) It is clear that "in a criminal trial the burden of proof as to all elements remains on the government." *United States v. Miller*, 199 F.3d 416, 422 (7th Cir. 1999). Here, the Government contends it made its statements simply to emphasize its position that there was never actually a developer who sought to purchase the property, but that rather, Defendant manufactured the idea of an interested developer to defraud Suarez. While neither side provided a transcript to ascertain the

exact language used, "improper comments during closing argument rarely rise to the level of reversible error." *Willis v. Lepine*, 687 F.3d 826, 834 (7th Cir. 2012) (internal quotations omitted). It is improbable that such a statement would have had the effect of shifting the burden of proof in the minds of the jurors.

Furthermore, the jury was specifically instructed on the requisite burden of proof and also instructed that "[t]he lawyers' statements and arguments are not in evidence." Jurors are presumed to be able to follow these instructions. *Stollings v. Ryobi Technologies, Inc.*, 725 F.3d 753, 769 (7th Cir. 2013). For these reasons, the Government's statements during closing argument do present a sufficient basis for a new trial.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Judgment of Acquittal [44] and Motion for a New Trial [43] are denied.

Date: November 12, 2013

_____
JOHN W. DARRAH
United States District Court Judge